UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID KEEN,

      Petitioner,

v.                                   Case No. 8:05-cv-1779-T-23TGW

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

Keen petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his convictions for first degree murder and attempted second degree murder, for which convictions Keen serves life. Numerous exhibits support both the petition ("Petitioner's Exhibit Tab ___") and the response (Doc. 10) ("Respondent's Exhibit ___"). The respondent admits the petition's timeliness (Response at 6, n.3 Doc. 10).

## I.  FACTS[1]

The record shows there were no fewer than three witnesses who saw Defendant shoot Karen Stewart on the night of May 9, 1994, and so testified, specifically, Russell Heslin, Angela Jeffers, and Ronald Wayne Stewart. Defendant presented no witnesses on his behalf, nor at any time during cross-examination did he challenge that it was he who shot Karen Stewart. The trial instead turned on the issue of whether Defendant premeditated his shooting of Karen Stewart.

---

[1] This summary of the facts derives from the state court's September 25, 2002, order (Petitioner's Exhibit Tab 3 at 7) summarily denying some grounds in Keen's Rule 3.850 motion for post-conviction relief, and the March 15, 2004, order (Petitioner's Exhibit Tab 8 at 2-3) denying post-conviction relief following remand (citations to record omitted).

Russell Heslin testified that he gave Defendant a loaded gun a few hours before Karen Stewart was killed.  Mr. Heslin identified the murder weapon as the gun he gave to the Defendant.

Angela Jeffers testified that Karen Stewart (her mother) terminated a relationship with the Defendant about two weeks before the murder, that the Defendant was mad, and that they argued about it.  Ms. Jeffers testified that on the day of the murder, Karen Stewart told Ms. Jeffers that the Defendant had told Karen Stewart he was "going to fuck her shit up." Later that day, Ms. Jeffers testified that she saw the Defendant grab Karen Stewart's hair, that he had a gun in his hand, and that she heard two shots.

Ronald Wayne Stewart testified that he saw the Defendant shoot Karen Stewart.

Chastity Heslin testified that she heard the Defendant threaten to kill Karen Stewart about a month before the murder because he was jealous when other men would call her.  Dominic Dinio provided expert testimony that the murder weapon was a single action revolver, which requires that the hammer be pulled back manually before it can be fired.

The assistant medical examiner testified that the victim was shot twice in the head.

## II.  PROCEDURALLY DEFECTIVE GROUNDS

The first two claims in ground two allege that Keen's right to due process and a fair trial were violated because the trial court (1) allowed the prosecution to introduce evidence of "prior bad acts" and (2) allowed an unqualified witness to offer an expert opinion.  Each claim challenges the correctness of the state court's evidentiary ruling.

Federal habeas corpus relief is generally not available for an error of state law. Pulley v. Harris, 465 U.S. 37 (1984); Wainwright v. Goode, 464 U.S. 78 (1983).  See also Estelle v. McGuire, 502 U.S. 62, 75 (1991) ("Nor do our habeas powers allow us to reverse [a] conviction based on a belief that the trial judge incorrectly interpreted the" state's rules of evidence.).  A federal court possesses only limited authority to review a

state evidentiary ruling by habeas corpus.  Burgett v. Texas, 389 U.S. 109, 113-114

(1967).  Rather, a federal court's inquiry into a state evidentiary ruling is limited to an

examination of whether the state violated a federally guaranteed right, Nordskog v.

Wainwright, 546 F.2d 69, 72 (5th Cir. 1977),[2] such as the denial of fundamental

fairness.  Hall v. Wainwright, 733 F.2d 766, 770 (11th Cir. 1984).  "As a guideline for

applying the criterion of fundamental fairness, the erroneous admission of prejudicial

evidence can justify habeas corpus relief only if it is material in the sense of a crucial,

highly significant factor."  Dickson v. Wainwright, 683 F.2d 348, 350 (11th Cir. 1982)

(citations omitted).  The category of infraction that violates fundamental fairness is

narrowly defined.  Estelle v. McGuire, 502 U.S. 62, 73 (1991).  For the most part, an

evidentiary ruling raises no question of constitutional magnitude.

> A federal habeas petition may be entertained only on the ground that a
> petitioner is in custody in violation of the Constitution or laws or treaties of
> the United States.  28 U.S.C. § 2254(a).  A state's interpretation of its own
> laws or rules provides no basis for federal habeas corpus relief, since no
> question of a constitutional nature is involved.  Bronstein v. Wainwright,
> 646 F.2d 1048, 1050 (5th Cir. 1981).  State courts are the ultimate
> expositors of their own state's laws, and federal courts entertaining
> petitions for writs of habeas corpus are bound by the construction placed
> on a state's criminal statutes by the courts of the state except in extreme
> cases.  Mendiola v. Estelle, 635 F.2d 487, 489 (5th Cir. 1981).

McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992), cert. denied, 507 U.S.

975 (1993).  Even if the error alleged in each claim rises to the level of a denial of

fundamental fairness, Keen never alerted a state court that he was asserting a federal

claim.  Consequently, the first two claims in ground two are unexhausted.

---

[2]  Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

A petitioner must present each claim to a state court before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971).  Accord Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  Also, a petitioner must present to the federal court the same claim presented to the state court.  Picard v. Connor, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  "Mere similarity of claims is insufficient to exhaust."  Duncan v. Henry, 513 U.S. at 366.  Additionally, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982).  See also Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).  Finally, presenting a federal claim to a state court without the facts necessary to support the claim is insufficient.  See, e.g., Brown v. Estelle, 701 F.2d 494, 495 (5th Cir. 1983)

("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

The respondent opposes these two claims specifically because Keen failed to exhaust.[3]  Keen recognizes the presentment deficiency but attempts to circumvent the exhaustion requirement by arguing that the state law claims are the "functional equivalent" of the federal law claims.  Keen misplaces his reliance on Peterson v. Lampert, 319 F.3d 1153, 1160 (9th Cir. 2003) (en banc), and Osborne v. Wainwright, 720 F.2d 1237, 1239 (11th Cir. 1983), each of which pre-dates the Supreme Court's rejecting a "similarity of claims" test in Duncan.  Peterson recognizes that Duncan eviscerates the "functional equivalent" theory.  Osborne's invalidity because of Duncan was recognized in Hartge v. McDonough, 210 Fed. Appx. 940, 943 (11th Cir. 2006).

The failure to properly exhaust available each state court remedy causes a procedural default of the unexhausted claim.  O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."), Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."),

---

[3]  The exhaustion doctrine precludes review of an unexhausted claim unless the respondent specifically waives the procedural default.  "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s prescription that the state must expressly waive the exhaustion requirement] applies and that McNair is procedurally barred from raising his extraneous evidence claim."  McNair v. Campbell, 416 F.3d 1291,1305 (11th Cir. 2005), cert. denied, 547 U.S. 1073 (2006).

Kennedy v. Herring, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), appeal after remand, Kennedy v. Hopper, 156 F.3d 1143 (11th Cir.), cert. denied sub nom Kennedy v. Haley, 526 U.S. 1075 (1999).

As a general proposition, a federal court is precluded from addressing the merit of a procedurally defaulted claim unless the petitioner can show "cause and prejudice" or "manifest injustice."  Coleman v. Thompson, 501 U.S. 72, 29 - 30 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986).  "Cause" must ordinarily be something external to the defense.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis original).

To meet the fundamental miscarriage of justice exception, Keen must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction."  Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause).

Keen attempts to show cause and prejudice by arguing that trial and appellate counsel were ineffective for not preserving the federal claim.  Keen must show that he has exhausted what he argues excuses his procedural default, to the extent it constitutes an independent constitutional claim.  See Murray v. Carrier, 477 U.S. at 488-89 (where ineffective assistance of counsel is alleged as cause to excuse a procedural default, the claim of ineffectiveness must be presented to the state courts as an independent claim);  Hill v. Jones, 81 F.3d 1015, 1830 (11th Cir. 1996) ("procedurally defaulted claims of ineffective assistance *cannot* serve as cause to excuse a default of a[nother]  claim.") (emphasis original), cert. denied, 519 U.S. 1119 (1997).  Keen's Rule 3.850 motion for post-conviction relief failed to include a claim of ineffective assistance of counsel on that basis.  Keen offers no manifest injustice argument.

Keen fails to establish either cause and prejudice or that a fundamental miscarriage of justice will occur if his claims are not addressed on the merits. Therefore, the first two claims in ground two are procedurally barred from review.

### III.  GROUNDS REVIEWABLE ON THE MERITS

Standard Of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

The state appellate court affirmed Keen's convictions and sentences on direct appeal in a per curiam decision without a written opinion, Keen v. State, 816 So2d 620

(Fla. 2d DCA 2002) (table), and likewise summarily affirmed, Keen v. State, 884 So2d
32 (Fla. 2d DCA 2004) (table),  the denial of his subsequent Rule 3.850 motion for
post-conviction relief.  The state appellate court's per curiam affirmances warrant
deference under Section 2254(d)(1) because "the summary nature of a state court's
decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245,
1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub
nom Wright v. Crosby, 538 U.S. 906 (2003).

Keen bears the burden of overcoming a state court factual determination by clear
and convincing evidence.  "[A] determination of a factual issue made by a State court
shall be presumed to be correct.  The applicant shall have the burden of rebutting the
presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).
This presumption of correctness applies only to a finding of fact, not a mixed deter-
mination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied,
534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of fact in the
state court's rejection of Keen's post-conviction claims of ineffective assistance of
counsel.

Ground One

Keen asserts four claims of ineffective assistance of trial counsel.  "[T]he cases in
which habeas petitioners can properly prevail on the ground of ineffective assistance of
counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir.
1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland
v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690.  Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Keen must demonstrate that error by counsel prejudiced the defense.

- 10 -

Strickland v. Washington, 466 U.S. at 691-92.  To meet this burden, Keen must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v.  Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington,  466 U.S. at 690-91.  Keen cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Keen must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The state court denied Keen's claims of ineffective assistance of counsel as follows:

> In his motion, Defendant raises seven grounds for relief, of which six are based on ineffective assistance of counsel.  The United States Supreme Court provided the following standard for determining ineffective assistance of counsel:

> > The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.  A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable . . . The proper standard for attorney performance is of reasonably effective assistance.

> Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984).

> In Downs v. State, 453 So. 2d 1102 (Fla. 1984), the Florida Supreme Court stated that the defendant must affirmatively prove prejudice.  The test for prejudice is:

> > That there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 694.

Petitioner's Exhibit 3 at 5-6.  Because the state court correctly recognized that Strickland

governs each claim of ineffective assistance of counsel, Keen cannot meet the "contrary

to" test in Section 2254(d)(1).  Keen instead must show that the state court

unreasonably applied Strickland or unreasonably determined the facts.

A.  Dr. Fellows

In 1995 a jury convicted Keen of Stewart's murder.  The conviction was affirmed

on appeal but successfully challenged in a motion for post-conviction relief in which

Keen proved that trial counsel rendered ineffective assistance.[4]  Keen was re-tried and

again found guilty in 2000.  In the first trial Keen testified and presented numerous

witnesses but not the testimony of Dr. Fellows.  In the second trial the defense rested

without presenting any evidence.  The second trial is the subject of this federal

proceeding.

---

[4] The order granting post-conviction relief found that trial counsel's performance in the 1995 trial was both deficient and prejudicial.

> [T]he Court finds that the Defendant is entitled to relief where the trial court's requirement that the Defendant testify in order to utilize an involuntary intoxication defense went unchallenged by defense counsel; defense counsel called the Defendant to testify where it was clear he did not wish to do so and was not advised of his right not to do so, subjecting the Defendant to cross examination, impeachment by prior convictions, and volunteering the nature of the prior convictions as being violent offenses; and defense counsel's failure to call the mental health expert, who was available at the trial to testify to support the defense of involuntary intoxication.  Defense counsel testified at the evidentiary hearing that she made a strategic decision not to call the mental health expert because she may be asked to reveal some damaging information about the Defendant's background, but the Defendant had already revealed damaging information about his background when his counsel asked him about the nature of prior convictions and defense counsel called another witness who made statements concerning prior threats to kill the victim by the Defendant, which was the same damaging information she did not want the mental health expert to refer.

Respondent's Exhibit 1, Record on Appeal at 38-39.

Keen alleges that trial counsel was ineffective for "failing to consult with and call as a witness Dr. Cheryl Fellows, a psychologist who had evaluated Keen, as Keen requested, to render her expert opinion that, based on Keen's alcoholism, mental defect, and intoxication, he was incapable of premeditating Stewart's murder."  The state post-conviction court rejected this claim as follows:

> In ground 2, Defendant claims ineffective assistance due to counsel's failure to call a mental health expert as a witness in his defense. Specifically, he claims he told counsel that Dr. Cheryl Fellows, who had been deposed by prior counsel, would testify that her professional opinion was that Defendant could not have formed the requisite intent for first degree murder, that of premeditation, and that he provided a copy of Dr. Fellow's deposition to counsel.  Defendant claims this testimony would have affected the outcome of the trial.
>
> . . .
>
> The record reflects that Dr. Fellows was deposed on two occasions for Defendant's first trial with respect to Defendant's capacity to form intent. The deposition(s) reflect:
>
>> QUESTION:  Now, is it your opinion because he's working in the low-average, low to average range, of his intelligence that would at any point, put aside any type of alcohol problem you may think that Mr. Keene has, would that in your eyes alleviate any ability to form the requisite intent for first degree murder?
>>
>> ANSWER:  Because he functions - let me be sure I understand you.  Are you asking me that because he's in the low-average range, that in and of itself would —
>>
>> QUESTION:  Um-hum, do you think that's an excuse?
>>
>> ANSWER:  No, no, that would not be enough.
>
> [A]nd:
>
>> QUESTION:  Okay.  Dr. Fellows, now directing your attention to the actual battery of tests that you [g]ave to Mr. Keene. Based on the defendant's test scores, is it your opinion that

because he was not capable of good judgment or was even slow in some of the logical reasoning tests that he is not capable of forming the requisite intent for first degree murder?

ANSWER:  I think what I said was not that he is not capable or that, but based on my interview of him, my test results, my opinion is that in this situation there was not anything beyond an impulsive kind of reaction to the situation and that would be consistent with the body style.

QUESTION:  Okay.  And do you have an opinion as to what IQ is necessary to have the capability to form the requisite intent for first degree murder?

ANSWER:  No, because it cannot be based strictly on IQ.

QUESTION:  Okay.

ANSWER:  Certainly someone needs to have enough intellectual ability to reason, but someone can be of genius IQ and have other problems in practical reasoning, impulsivity or other characteristics that could interfere with their ability to form . . . form specific intent.  It could be influenced by a wide variety of things, including alcohol, drugs, stress, depression, so we can't just say because of an IQ number somebody can form intent.  It's [sic] takes in mixed variables.

QUESTION:  Dr. Fellows, would you have, based on the tests that you administered to David Keene, would you have an opinion as to whether Mr. Keene has the ability to distinguish between right and wrong?

ANSWER:  Yes, he does.

Thus, Defendant's suggestion that Dr. Fellows' testimony would have shown that Defendant could not have formed the requisite intent for first-degree murder is inaccurate.  Defendant fails to prove prong 2 of Strickland.  No relief is warranted on ground 2.

Petitioner's Exhibit Tab 3 at 7-10 (citations to record omitted).

The reasonableness of counsel's action is the focus of an ineffectiveness claim. Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). Strickland v. Washington, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). This court's duty is not to again determine the reasonableness of counsel's actions, but "to determine whether the state habeas court was objectively reasonable in its Strickland inquiry." Putnam v. Head, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), cert. denied, 537 U.S. 870 (2002). The state post-conviction court's decision was a reasonable application of Strickland.

Counsel's trial strategy for the second trial was necessarily shaped by what happened during the first trial, and, as a consequence, trial counsel knew both the strength of the state's case and the weakness of the defense strategy employed in the first trial. The defense chose not to present Dr. Fellows in the first trial because counsel feared the witness would reveal information harmful to Keen's defense. This same concern remained for the second trial. Moreover, the post-conviction court determined that, contrary to Keen's contention, Dr. Fellows would not have testified that Keen was incapable of forming the requisite intent for first-degree murder. Presenting the testimony of Dr. Fellows would have caused defense counsel, under then-applicable Florida procedure, to lose first and last closing arguments. Consequently, the state court's decision—that trial counsel was not ineffective because counsel reasonably weighed the risks of presenting Dr. Fellows's testimony—is a reasonable application of Strickland.

B.  Conceding Guilt

Keen alleges that trial counsel was ineffective for "conceding guilt in summation."

The state post-conviction court rejected this claim as follows:

> In ground 6, Defendant claims ineffective assistance due to counsel's statements during closing argument that counsel conceded his guilt and that "David had to be impaired[,] he tried to kill Angela Jeffers."  He argues that had counsel not conceded his guilt and had not told the jury that Defendant shot Angela Jeffers, the outcome of the trial would have been different.
>
> The record reflects that during the hearing on Defendant's motion in limine, the following occurred:
>
>> MR. FRASER:  Finally, Mr. Keen and I have conferred and you might want to note on the record that Mr. Keen agrees that I'm authorized to represent to the jury that he is guilty of some offense. The jury's job is to figure out which one.
>>
>> THE COURT:  Okay.  Do you understand that, Mr. Keen?
>>
>> THE DEFENDANT:  Yes, sir.
>>
>> THE COURT:  You agree to that?
>>
>> THE DEFENDANT:  Yes, sir.
>
> Defendant authorized counsel to state to the jury that Defendant had committed some offense.  Defendant fails to prove prong 1 of Strickland. No relief is warranted on ground 6.

Petitioner's Exhibit Tab 3 at 13-14 (citations to record omitted).

The state court ruled that Keen waived this claim by authorizing counsel's admission to the jury that Keen was guilty of some offense.  Based on the record, that ruling is not unreasonable.

Moreover, the argument Keen (through counsel) presents in this federal action is not the same argument that Keen (pro se) presented to the state court—the focus of the

claim changes.  The state challenge focused on the fact that counsel admitted that Keen committed an offense.  The federal petition focuses on counsel's choice of words when admitting that Keen committed an offense.  But the connotation Keen's counsel now ascribes to the words trial counsel used is not necessarily the message conveyed to the jurors.  The final sentence of the following comments is the basis for this claim.

> Who do we have here?  We have a twenty-three year old guy who's obviously immature.  He drinks.  Doesn't drink very much, but when he does drink he gets goofy.  He is drunk.  Had plenty to drink by virtually all the testimony and he kills his girlfriend.  He shoots her.  What was he thinking?  Or, what was he not thinking is a better question.  What was he not thinking when he did it?  Now the State wants to have it both ways.  On one hand they want to say, "Well, he's clear minded enough to form the criminal intent to commit first degree murder."  On the other hand the State wants to say, "Well, he's not intoxicated."  Of course, there's no explanation for the second charge which is attempted second degree murder where Angela Jeffers said that, "Gee, by her guesstimation it was six feet away."  And I think Mr. Heslin[5] put her some ten feet away tops, where you supposedly have David Keen holding a pistol in both hands aiming it right at her.  A perfectly functional pistol, according to Mr. Dinio.[6] One that will shoot straight and hit what you want, according to him, at six to ten feet.  He fires at her twice and misses her.  And they say he's not drunk.  What is it?  Either he's not drunk or he's not trying to kill her.  Which is it?  The State doesn't make the election there.  This State wants it both ways and you shouldn't permit it.  The man is either drunk or he isn't.  Obviously he's impaired, because he's trying [to] kill Angela Jeffers.

Respondent's Exhibit 1, vol. 3 at 406-07.  Keen's federal petition unduly focuses on the word "trying" and ascribes to it an admission that Keen was mentally capable of forming the requisite intent to kill, thus eviscerating his entire defense of intoxication.  Closing comments are reviewed based on the entire record and in context, not in isolation.  See e.g., United States v. Young, 470 U.S. 1, 11 (1985), and United States v. Overton, 134

---

[5]  One of the eyewitnesses who testified.

[6]  The firearms expert witness.

Fed. Appx. 354, 359 (11th Cir.), cert. denied, 546 U.S. 953 (2005).  The fact that Keen

was intoxicated is not disputed.  The above comments show that trial counsel was

attacking the prosecutor's facially inconsistent argument that Keen was drunk and that

he deliberately planned the killing.  Notwithstanding Keen's authorization for counsel to

admit guilt, the meaning of the one word, "trying," when viewed in proper context, hardly

rises to the level of adversely effecting the trial's outcome.

C.  Keen's Prior Prison Record

Keen asserts that trial counsel was ineffective for not objecting to testimony (1)

that Keen was in prison when he allegedly uttered incriminating remarks and (2) that the

trial was Keen's second jury trial for these same charges.  The state post-conviction

court rejected both claims as follows:

> As to ground 3, Defendant claims ineffective assistance due to counsel's
> failure to object when State witness Donald Spivey violated the Court's
> order to not mention that Defendant was in prison and that this was
> Defendant's second trial for first degree murder and attempted first degree
> murder.  Defendant claims that had counsel objected, the Court would
> have stricken the testimony for violating the Court's order, and the
> outcome would have been different.  Also he argues, that because counsel
> did not object, the issue was not preserved for direct appeal.
>
> The record reflects that Defendant filed a motion in limine listing 13 facts,
> including "Defendant's serving time in a prison" and "any mention of a
> previous trial."  The Court held a hearing on the motion on 4 December
> 2000 and ruled on these requests as follows:
>
> > THE COURT:  Any others, Mr. Moody, that you contest?
> >
> > MR. MOODY [prosecutor]:  In terms of the defendant serving
> > time in prison before this, but if Mr. Spivey testifies they were
> > in prison together, he can say they were incarcerated
> > together or in jail together.

> MR. FRASER [defense counsel]:  If Mr. Spivey testifies that
> is relevant.  I'm just trying to keep it out of the trial until Mr.
> Spivey testifies.
>
> MR. MOODY:  The other witness I will instructed [sic] them
> not to mention that he had been in prison prior to [sic].
>
> THE COURT:  Okay.

[A]nd:

> THE COURT:  [A]ny other objections?
>
> MR. MOODY:  The previous trial I have instructed the
> witnesses, and will again, that if they mention that it was a
> previous hearing if they get impeached and not use prior
> trial. I would request a few minutes to talk to each of these
> people before they testify.

Thus, the Court did not rule that witness Spivey could not mention that he
knew Defendant from prison, rather, the Court ruled that no other witness
could mention that Defendant was in prison.

The record reflects that during trial, defense counsel, the assistant state
attorney, and the Court had a lengthy discussion out of the hearing of the
jury regarding the proper scope of witness Spivey's testimony.  The Court
concluded that witness Spivey could testify as to what Defendant told him
and that defense counsel could use the letter witness Spivey wrote to the
State Attorney to impeach him.  The only question witness Spivey
answered which could possibly be construed as referencing a prior trial is
the following:

> QUESTION:  At any time did he brag that he was going to
> get away with it?
>
> ANSWER:  Yes, sir.
>
> QUESTION:  What did he tell you, specifically?
>
> ANSWER:  He said that he won his case on appeal for
> ineffective assistance of counsel.

In view of the de minimis effect this exchange could possibly have had on
the jury, given that three witnesses had already testified that they saw

> Defendant shoot Karen Stewart, Defendant does not satisfy prong 2 of
> <u>Strickland</u>.  No relief is warranted on ground 3.

Petitioner's Exhibit Tab 3 at 10-12 (citations to record omitted).

In the state proceedings Keen argued that Spivey's testimony about Keen's prison confinement violated the trial court's order granting the motion <u>in</u> <u>limine</u>. Petitioner's Exhibits Tab 3 at 33-34 (motion for post-conviction relief) and Tab 4 at 31-32 (initial brief on appeal).  The trial record fully supports the post-conviction court's determination of no violation of the trial court's order.  Respondent's Exhibit 1, vol. 3 at 447-48.  Keen fails to show that the state court's application of <u>Strickland</u> was unreasonable.

Counsel for Keen re-characterizes the claim in the federal petition.  Instead of focusing on whether the testimony violated the trial court's order, the claim in the federal petition focuses on trial counsel's not attempting to completely exclude the testimony. Because this challenge to trial counsel's strategy was not presented to the state courts, the re-characterization presents an unreviewable, unexhausted claim.  As discussed earlier in this order, similarity of claims is insufficient.

Keen's second claim alleges that trial counsel was ineffective for not objecting to Spivey's reference to Keen's earlier jury trial for these same charges.  The state post-conviction court rejected this claim based on a lack of prejudice.  Keen presents no evidence showing prejudice.  Consequently, Keen fails to meet his burden of showing that the state court's decision was an unreasonable application of <u>Strickland</u>.

D.  Prosecutor's Improper Closing Comments

Keen alleges that trial counsel was ineffective for "failing to object to prosecutorial misconduct during summation wherein the prosecutor alluded to Keen's prior threats to Stewart."  The state post-conviction court rejected this claim as follows:

> In ground 5, Defendant claims ineffective assistance due to counsel's failure to object to the State's closing argument when the State said, "This jealous man, who a month earlier had threatened to kill Karen Stewart because someone called her" because there was no evidence presented at trial that Defendant had made this statement.
>
> The record reflects that Chastity Heslin did testify that she heard Defendant tell Karen Stewart that "he didn't want him calling (another male) any more and that if he did that he (Defendant) would hurt her."
>
> Thus, Defendant is incorrect when he suggests that no evidence was introduced about his earlier threat to kill Karen Stewart and that counsel should have objected to the State Attorney's comment.  Defendant fails to satisfy prong 1 of Strickland.  No relief is warranted on ground 5.

Petitioner's Exhibit Tab 3 at 13 (citations to record omitted).

In the state proceedings Keen argued that counsel was ineffective for not objecting to the prosecutor's comment because no testimony supported the comment. Petitioner's Exhibits Tab 3 at 35 (motion for post-conviction relief) and Tab 4 at 35-37 (initial brief on appeal).  The trial record supports the post-conviction court's determination that some testimony was presented to support the prosecutor's comment. Respondent's Exhibit 1, vol. 2 at 273.  The state court ruled that, because the comment was supported by some evidence, trial counsel's failure to object was not deficient performance.  Keen fails to show that the state court's application of Strickland was unreasonable.

Counsel for Keen re-characterizes the claim in the federal petition.  Instead of focusing on the lack of evidence to support the comment, the claim in the federal petition contends that trial counsel should have objected because the prosecutor's comment was based on "improper bad acts evidence."  Because this basis for his claim was not presented to the state courts, the re-characterization presents an unreviewable, unexhausted claim.  Counsel recognizes in his reply (Doc. 19) that the claim in the federal petition is broader than the claim presented to the state courts.  As discussed earlier in this order, similarity of claims is insufficient.

Ground Two

Keen's remaining claim in ground two[7] alleges that his right to due process and a fair trial was violated because the conviction lacks "substantial evidence supporting a finding of premeditation by proof beyond a reasonable doubt."  The respondent argues that Keen fails to meet the exhaustion requirement because he failed to "federalize" his claim in the state proceedings.  Although in the state proceedings Keen raised this claim only as a state law issue, exhaustion is complete because the state standard of review for a sufficiency-of-the-evidence claim is identical to the federal standard of review.

> Florida courts assess the sufficiency of the evidence used to convict criminal defendants under a legal standard identical to the one used by federal courts in deciding federal due process challenges to the sufficiency of the evidence.
>
> In this case, the state court analyzed Mulnix's due process sufficiency of the evidence claim using a standard identical to the one required under federal law.  Under these circumstances, we conclude Mulnix's federal claim has been exhausted.

Mulnix v. Sec'y, Dep't of Corr., 254 Fed. Appx. 763, 764-65 (11th Cir. 2007).

---

[7] This order earlier determines that the first two claims in ground two are unexhausted and unreviewable.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." In re Winship, 397 U.S. 358, 364 (1970). Jackson v. Virginia, 443 U.S. 307, 324 (1979), set the standard of review in a federal habeas corpus proceeding where a petitioner challenges the sufficiency of the evidence:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for the claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

The focus is on whether some rational trier of fact could have found proof beyond a reasonable doubt, not whether the habeas court believes the evidence. Jackson v. Virginia, 443 U.S. at 318-19 ("[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.' " (quoting Woodby v. INS, 385 U.S. 276, 282 (1966) (emphasis in original)).

A federal court, reviewing a state conviction in a habeas proceeding, must defer to a jury's credibility determination in weighing conflicting evidence.

> The federal courts have consistently reiterated that this standard for weighing the constitutional sufficiency of the evidence is a limited one. It is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt. Faced with a record of historical facts that supports conflicting inferences, we must presume that the jury resolved such conflicts in favor of the prosecution, deferring to the credibility of the evidence. The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief.

Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir.) (footnote and citations omitted), cert. denied, 484 U.S. 925 (1987). Accord Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001) ("Although each element of the offense must be established beyond a

reasonable doubt, see Bishop v. Kelso, 914 F.2d 1468, 1470 (11th Cir. 1990) (citing Jackson [v. Virginia], 443 U.S. at 316), the State is not required to rule out every hypothesis except that of the guilt of the defendant, see Jackson [v. Virginia], 443 U.S. at 326.").  In other words, a federal court must defer to the judgment of the jury in assessing a witness's credibility and weighing the evidence.

That Keen shot Karen Stewart is undisputed.  Keen's defense was that his intoxication prevented his forming the requisite premeditation for first degree murder. The evidence of Keen's mental state that the jury had for consideration included (1) Keen's refusing to accept the dissolution of his relationship with Stewart and his consequently destroying her property and threatening to harm her, (2) his obtaining a gun from a friend and his driving successfully when the two attempted to steal a car, both of which occurred a few hours before the shooting, and (3) his shooting Stewart twice in the head and shooting at Jeffers twice with a single-action .22 caliber revolver that must be manually cocked each time the gun fires (as compared to a double-action revolver, which automatically cocks each time the gun fires).  Assessing these facts, a rational trier of fact could find proof of premeditation beyond a reasonable doubt.

Accordingly, Keen's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Keen and close this action.

ORDERED in Tampa, Florida, on December 16, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE